# Ronald J. & Eva M. Vanderhoof v. James H. & Judith S. Cleary, Gear & Davis, Inc. and Christopher Davis, Esq.

[725 A.2d 917]

No. 97-514

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed December 24, 1998

*Stuart M. Bennett,* Shelburne, for Plaintiffs-Appellants.

*Thomas F. Heilmann* of *Heilmann, Ekman & Associates, Inc.,* Burlington, for Defendant-Appellee.

**Skoglund, J.** The question presented is whether a shareholder of a law firm organized under the Vermont Professional Corporation Act, 11 V.S.A. ch. 3, is vicariously liable for the acts or omissions of another shareholder of the firm. Plaintiffs sued defendant Davis for damages arising out of an allegedly defective title search done by an attorney in defendant's law firm.[1] The Franklin Superior Court granted Davis's summary judgment motion, and this appeal followed. We affirm.

The relevant facts as developed in the summary judgment record are not in dispute. Defendant Davis and Allen F. Gear created a professional corporation in 1982 under the Vermont Professional Corporation Act. Both Davis and Gear were shareholders of the corporation. Gear died in 1991, and in 1994 the Vermont Secretary of State issued a certificate of dissolution of the corporation (then known as Gear, Davis & Kehoe).

Plaintiffs began the present action in February 1996 against Gear & Davis, Inc. and defendant Davis individually, alleging that a title

---

[1] The complaint initially included the corporation and James and Judith Cleary as defendants, but they were later dismissed by stipulation.

opinion produced by Gear in 1989 in connection with the purchase of an apartment house in Fairfax failed to mention that state and local permits were required for the multi-family apartment but had not been obtained, an omission that subsequently resulted in substantial financial harm to plaintiffs. The title opinion was signed "Gear & Davis, Inc. by Allen F. Gear, Esquire." Plaintiffs concede that they dealt almost exclusively with Gear, who signed the title search for the subject property.

Defendant moved for summary judgment on grounds that plaintiffs' claim against him was purely one for vicarious liability, since he was not involved in the allegedly defective title search. Relying on the Vermont Professional Corporation Act, defendant argued that the Act protects a shareholder of a professional corporation from personal liability for negligence committed by another shareholder. The court granted defendant's motion, and the present appeal followed.

Pursuant to 11 V.S.A. § 803, professional corporations enjoy the powers and privileges — and are subject to the duties, restrictions and liabilities — of other corporations, except where inconsistent with the letter and purpose of the Professional Corporation Act. The general purpose of the Professional Corporation Act is set forth in 11 V.S.A. § 813 as:

> making available to professional persons the benefits of the corporate form for the business aspects of their practices, while preserving the established professional aspects of the personal relationship between the professional person and those he [or she] serves.

Under the Vermont Business Corporation Act, 11A V.S.A. §§ 1.01-20.16, a "shareholder of a corporation is not personally liable for the acts or debts of the corporation except that he or she may become personally liable by reason of his or her own acts or conduct." 11A V.S.A. § 6.22b).

Plaintiffs agree that their claim against defendant is limited to a theory of vicarious liability, but they argue that the Professional Corporation Act must be construed in light of Vermont's Code of Professional Responsibility, specifically Ethical Consideration (EC) 6-6, which states:

> A lawyer should not seek, by contract or other means, to limit his individual liability to his client for his malpractice. A lawyer who handles the affairs of his client properly has no need to attempt to limit his liability for his professional

activities and one who does not handle the affairs of his client properly should not be permitted to do so. A lawyer who is a stockholder in or is associated with a professional legal corporation may, however, limit his liability for malpractice of his associates in the corporation, *but only to the extent permitted by law.*

EC 6-6 (emphasis supplied). Plaintiffs read the EC 6-6 as a direct limitation on the protection from vicarious liability afforded lawyers practicing law as a professional corporation under the Professional Corporation Act.

Plaintiffs' argument fails. We begin by noting that there is nothing inconsistent with the protection from liability for shareholders in a corporation found in 11A V.S.A. § 6.22(b) and the letter or purpose of the Professional Corporation Act. Nor does the Professional Corporation Act contain any provision that alters or affects the rights and privileges granted to a shareholder of a corporation under the Vermont Business Corporation Act.[2] Therefore, the protection found in 11A V.S.A. § 6.22(b) is available to shareholders in corporations incorporated under the Vermont Professional Corporation Act.

To support their contention that the Professional Corporation Act must be analyzed within the context of the Code of Professional Responsibility and EC 6-6, plaintiffs rely on *First Bank & Trust Co. v. Zagoria,* 302 S.E.2d 674 (Ga. 1983), wherein the Georgia Supreme Court found individual lawyers in a professional corporation liable for the issuance of checks without sufficient funds in connection with a real estate closing. They acknowledge that this case has been overruled. See *Henderson v. HSI Fin. Servs., Inc.,* 471 S.E.2d 885, 885-86 (Ga. 1996). In *Zagoria* the court based its holding on the court's authority to regulate the practice of law, and stated that the case was not one that required it to interpret the statutes providing for the creation and operation of professional corporations. 302 S.E.2d at 675. The *Zagoria* court concluded that the "legislature has the clear right to enact technical rules for the creation and operation of professional corporations, but it cannot constitutionally cross the

---

[2]The only provision of the Professional Corporation Act that relates to liability issues is found in § 808, which addresses the liability of "person[s] *employed* by the [professional] corporation arising out of professional services." 11 V.S.A. § 808 (emphasis added). Plaintiffs do not make any claim against defendant that his liability stems from his employment by the law firm or that his liability arises out of the rendition of professional services. They ground their claim on vicarious liability for the alleged negligence of others.

gulf separating the branches of government by imposing regulations upon the practice of law." *Id.* While the court acknowledged that Georgia's EC 6-6 (at the time, identical to Vermont's EC 6-6) could be read to authorize a limitation of liability for malpractice of associates by contract or arrangement with the clients of the professional corporation, it held that the section was not a self-executing rule that automatically insulated each shareholder from liability for the malpractice of another. *Id.* at 676. Finding nothing in the record to indicate that the attorney and the clients of the firm entered into a contract or arrangement for limitation of liability, the court held the attorney liable. *Id.*

Plaintiffs seek to breathe life into *Zagoria* by pointing out that the *Henderson* holding followed an amendment of the last clause of Georgia's EC 6-6. The amendment to Georgia's EC 6-6 replaced the phrase "but only to the extent provided by law" with the phrase "as authorized by Rule 1-203(4)," a specific Georgia Bar rule allowing attorneys to practice law in various organizational forms, including professional corporations defined by Georgia statutes. This amendment does not distinguish *Zagoria* from *Henderson* because it merely adds greater specificity without changing the clause substantively.

Of greater moment is *Henderson*'s analytical premise that the legislature has the power to determine the right and ability of corporate shareholders to be protected from personal liability for the obligations of such corporations and for the acts of other shareholders. As the court in *Henderson* stated:

> Although this court defines whether lawyers may practice their profession in a partnership, professional corporation, or other group structure, the relevant statutes govern whether a particular structural form provides its members with exemptions from personal liability.

*Henderson*, 471 S.E.2d at 886.

Just as the Georgia Bar's rules and regulations specifically approve the professional corporation as an appropriate form of organization for lawyers, our rules define "law firm" to include a professional legal corporation. Code of Professional Responsibility, Definitions (2). We agree with the *Henderson* court and look to the statutorily defined limits on liability for shareholders in corporations to decide this issue. EC 6-6 does not modify the statutes governing professional corporations nor is it contrary to the text or the underlying purpose of the Professional Corporation Act. Rather, EC 6-6 states that "[a] lawyer

should not seek, by contract or other means, to limit his [or her] individual liability to his client for his [or her] malpractice," implying — and thereafter confirming — that seeking to limit his [or her] liability for the malpractice of associates in a professional legal corporation, thus avoiding vicarious liability, is proper "to the extent permitted by law." The latter phrase brings us back to the Professional Corporation Act, which neither augments nor limits the applicability of EC 6-6. See generally *Swanson & Lange v. Miner*, 159 Vt. 327, 333, 623 A.2d 976, 979 (1992) (in action to recover legal fees, two specific ethical considerations within Code did not impose heightened burden of proof on plaintiffs).

Finally, plaintiffs rely on a formal ethics opinion issued by the Committee on Professional Ethics of the American Bar Association, which states in relevant part as follows:

> The comments above [concerning professional responsibility for legal services provided by a law firm] make it clear that it is possible for lawyers to engage in the practice of law under a form of organization that imposes limited liability without violating any of the Canons of Ethics if the following safeguards are observed:
>
> 1. The lawyer or lawyers rendering the legal services to the client must be personally responsible to the client.
>
> 2. Restrictions on liability as to other lawyers in the organization must be made apparent to the client.

ABA Comm. on Professional Ethics, Formal Op. 303 (1961). They contend that the ABA opinion establishes a precondition to enjoyment of the benefits of the Professional Business Corporation Act, and argue that, unless a lawyer "[makes] apparent to the client" restrictions on his or her liability for the negligence of other firm attorneys, vicarious liability will be applied to hold all members of the firm liable for the negligent injury caused by any member.

An ABA ethics opinion is not binding on this Court. Even if it were, it is undisputed that at all relevant times the firm of Gear & Davis held itself out as a professional corporation. There is no provision in the Professional Corporation Act stating that the protection of § 6.22(b) of the Business Corporation Act will apply only if the shareholder personally and specifically calls the clients' attention to the provisions of the Act.

*Affirmed.*